UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA,        )
                                 )    Case No: 1:09-CR-38
        v.                       )
                                 )
TIMOTHY H. PARKES                )    Chief Judge Curtis L. Collier
                                 )

## MEMORANDUM

Before the Court is Defendant's motion for release pending appeal or, in the alternative, for

release to voluntarily surrender to the facility designated by the Bureau of Prisons (Court File No.

96). The Government filed a response to this motion (Court File No. 101). The Court held a hearing

on December 22, 2009, to provide the parties an opportunity to argue their positions. After carefully

considering the arguments raised both at the hearing and in the parties' filings with the Court, the

Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion (Court File No. 96).


I.      **RELEASE PENDING APPEAL**

        Defendant is currently incarcerated at the Silverdale Detention Center where he is awaiting

a facility designation by the Bureau of Prisons. He has filed a notice of appeal of his conviction and

sentence (Court File No. 100) and asks this Court to release him from custody pending appeal.

Defendant contends he does not pose a danger to the community, is not a flight risk, and the issues

to be raised on appeal constitute substantial issues of law or fact.

        Pursuant to Fed. R. Crim. Proc. 46(c), the provisions of 18 U.S.C. § 3143 govern release

pending appeal with the burden resting on the defendant. Under § 3143 (b), a judicial officer shall

order a person who has been found guilty of an offense and sentenced to a term of imprisonment be

detained, unless certain conditions are met. This provision creates a presumption a defendant who is convicted of a crime may not be released pending his appeal unless he shows by clear and convincing evidence he is not likely to flee or pose a danger to the community. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). An individual may be released pending appeal if a judicial officer finds by clear and convincing evidence the "person is not likely to flee or pose a danger" to the community, and the appeal is not for the purpose of delay and "raises a substantial question of law or fact likely to result in" a reversal, new trial, sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus expected duration of the appeal process." 18 U.S.C. § 3143 (b).

### 1.     Not Likely to Flee or Pose a Danger to the Community

The Court finds clear and convincing evidence support Defendant does not "pose a danger" to the community. He was convicted of a nonviolent offense, has no criminal history, and this Court previously determined his eligibility for release on bond pending trial and sentencing. Defendant has done nothing to jeopardize the Court's opinion he does not present a risk of danger to society. However, the Court finds Defendant has not presented clear and convincing evidence he is not likely to flee during the pendency of his appeal. Defendant cites his repayment of the debt after problems were discovered in December 2007, his behavior while on bond pending sentencing, his ties to his family and the community as clear and convincing evidence he poses no risk of flight.

While Defendant's repayment of restitution and his behavior awaiting sentencing are evidence of his commitment to his obligations, Defendant now faces a sentence of 78 months and may be more inclined to relocate and avoid incarceration than he was before he knew his sentence. The situation has changed significantly since his sentence was imposed. Prior to sentencing,

Defendant has a hope, if not an expectation, he would receive a sentence of no or minimal incarceration. Both his payment of restitution and his complying with the terms of his release serve as support for his request for a non-custodial sentence. But now that his hope or expectation has not borne out, those acts do not provide the Court of assurances he will not flee. As the Court noted at sentencing, Defendant is a Canadian citizen and could enter Canada with ease and would have no difficulty living in his home country. Defendant speaks multiple languages, from the presentence report Defendant has access to substantial financial resources that would enable him to live comfortably in a foreign country. He has significant global contacts that exceed those of the average defendant.

Defendant argues if he should return to Canada, the extradition treaty with Canada would result in his being hunted down and returned. The Government counters that extradition from Canada is time consuming and the process takes at least three to four years. Defendant travels frequently to China for his business, speaks the language, and has extensive contacts overseas. He would not have difficulty living in China. The Court is not convinced Defendant would be so easily located and returned from China should he choose to flee. Defendant's family and grown children could just as easily relocate to or travel to visit him in another country, whether it be Canada or China. Although U.S. Probation Officers do not object to Defendant's release on bond, the Court is not in agreement. It is the Court's obligation to evaluate Defendant's amenability to serving a sentence. Multiple attempts to contact Defendant the week prior to sentencing were unsuccessful and caused concern to the Court and the U.S. Probation Office.

Defendant cites *United States v. Hung*, 439 U.S. 1326 (1978), in support of his argument a non-citizen should not automatically be considered a flight risk. The Court makes a determination

of Defendant's risk of flight on multiple factors and not solely or predominantly on his Canadian citizenship. The defendant in *Hung* was a non-U.S. citizen charged with espionage and despite evidence the defendant maintained contact with a Vietnamese ambassador in Paris, had not established a permanent residence in the United States, and difficulty in procuring his return should he leave the country, was allowed to remain on bond pending appeal. *Hung*, 439 U.S. at 1329. "[T]hese considerations suggest opportunities for flight, they hardly establish any inclination on the part of the applicant to flee" and "other evidence supports the inference" defendant was not so inclined. *Id*. Similar considerations are present here, with Defendant's home and family connections, his residing in Tennessee for nearly 25 years all weigh against his classification as a flight risk. However, the *Hung* case was decided prior to the Bail Reform Act of 1984, within which 18 U.S.C. § 3143(b) is included. The enactment of the Bail Reform Act of 1984 changed the presumption so that the conviction is presumed correct and the burden is on the convicted defendant to overcome that presumption. *See United States v. Giancola*, 754 F.2d 898, 900-01 (11th Cir. 1985) (citing S. Rep. No. 225, 98th Cong., 1st Sess. 26 (1983), *reprinted* in 1984 U.S. Code Cong. & Ad. News 3182, 3209).

Defendant "is willing to wear an ankle bracelet and be monitored while on bond." (Court File No. 96, p.6). While these offers are appropriate, they do not alleviate the Court's concerns. In both cases they do not prevent a person from fleeing, they merely serve to alert the Court after the fact that the person has fled. Although home monitoring allows the probation office to supervise defendants while on home arrest, it does not provide the Court with adequate assurance Defendant would not attempt to escape. There is a delay in detection of escape from a home monitoring device. Defendant's access to money and overseas resources would not present an obstacle to fleeing the

country while on a home monitoring device. An appeal could take considerable time during which Defendant would have means to escape and a network of overseas contacts he could utilize for assistance.

**2.     Appeal Raises Substantial Question of Law or Fact**

Defendant did not file a motion for a new trial, however, he has filed a notice of appeal and contends he will present multiple issues likely to result in a new trial or an acquittal. The issues Defendant will raise on appeal are the Court's denial of Defendant's Rule 29 motion, exclusion of loans created by bank president Jimmy Goddard ("Goddard") as routine practice evidence, exclusion of Mr. Stevens' testimony, prosecutorial misconduct during the trial, and the calculation of loss for sentencing purposes.

This Court has determined the "clear and convincing" standard to only apply to the first section of 18 U.S.C. § 3143 (b)(1). *United States v. Roth*, 642 F. Supp. 2d 796, 798 (E.D. Tenn. 2009). The less demanding "preponderance of the evidence" standard applies to the remainder. *Id.* (citing *United States v. Meyers*, 95 F.3d 1475, 1489 (10th Cir. 1996). As to § 3143(b)(1)(B), an "appeal raises a substantial question when the appeal presents a close question or one that could go either way" and the "question is so integral to the merits of the conviction that it is more probable than not that reversal or new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985). The Court is not required to find "that it committed reversible error" nor must it find the "defendant is likely to prevail on appeal." *Id*. at 1181-82; *United States v. Powell*, 761 F.2d 1227, 1234 (8th Cir. 1985). The inquiry is whether "if error is found, it will so taint the conviction that it is more probable than not that reversal will be required." *United States v. Scheur*, 626 F. Supp. 2d 611, 616 (E.D. La. 2009). This question is

5

"either novel," has not been "decided by controlling precedent," or is "fairly doubtful." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985); *see also United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985).

Not only must the question be substantial, the resolution of the question on appeal must likely result in a reversal, new trial, sentence that does not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus expected duration of the appeal process." 18 U.S.C. § 3143 (b). The Court will analyze each of Defendant's cited appealable issues in turn.

### A. Court's Denial of Rule 29 Motion

Defendant contends there was a "complete lack of evidence" presented in trial to cause a jury to find beyond a reasonable doubt Defendant committed the acts described in counts four through thirteen of the superseding indictment. The Court's decision to deny Defendant's motion for judgment of acquittal under Rule 29(a) is reviewed de novo. *United States v. Mabry*, 518 F.3d 442, 447-48 (6th Cir. 2008). The inquiry on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Jones*, 102 F.3d 804, 807-08 (6th Cir. 1996). A defendant raising this challenge "bears a heavy burden." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

The Court does not think Defendant has maintained this heavy burden and has failed to establish a substantial issue of law in light of the evidence presented during the trial. "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Vannerson*, 786 F.2d 221,

6

225 (6th Cir. 1986). The essential elements of the crime are taken from the jury instructions and include:

(1) the defendant knowingly executed a scheme to defraud Benton Banking Company or to obtain money or other property owned by or in the control of Benton Banking Company by means of false or fraudulent pretenses, representations or promises;

(2) the scheme related to a material fact or included a material misrepresentation or concealment of a material fact;

(3) the defendant had the intent to defraud; and

(4) at the time, Benton Banking Company was federally insured.

The offense is a conspiracy-type offense, that is, it is premised on concerted activity. Therefore, to convict Defendant, it was not necessary for the jury to find the defendant personally did all the acts or even knew in advance of specific acts, as long as the acts fell within the scope of the alleged agreement and they furthered the agreement. The evidence presented at trial established these elements such that a rational trier of fact could have found Defendant guilty beyond a reasonable doubt. The Court carefully considered the evidence presented and denied Defendant's Rule 29 motion during the trial. The evidence supported the jury's verdict and the Court does not find the resolution of this issue to be "a close question" or one that "could go either way," therefore it would not support release on bond pending appeal.

### B.    Evidentiary Rulings During Trial

During the proceedings, the Court excluded a list of 313 loans (260 of which were unrelated to Defendant) prepared by the FDIC. Defendant sought to introduce this evidence under Fed. R. Evid. 406 as Goddard's "routine practice" of hiding loans. Defendant also sought to introduce

testimony by Carl Ray Stephens, who did not know Goddard created false notes on his behalf. The Court sustained the government's objection to this evidence.

Under Fed. R. Evid. 406, this evidence was clearly inadmissible since it did not constitute habit on the part of Goddard or routine practice on the part of Benton Bank. The Court's evidentiary rulings will be reviewed on appeal under the "abuse of discretion" standard. *United States v. Davis*, 577 F.3d 660, 666 (6th Cir. 2009); *United States v. Schreane*, 331 F. 3d 548, 564 (6th Cir. 2003). Under this standard, "an abuse of discretion will be found upon a definite and firm conviction that the court below reached a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Schreane*, 331 F.3d at 564. District courts are "accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of the proffered evidence, and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." *United States v. Abel,* 469 U.S. 45, 54 (1984).

Even if Defendant could overcome the deferential abuse of discretion standard and succeed in appealing the Court's evidentiary rulings, neither would "so taint the conviction" that a reversal would be warranted. The Court finds its evidentiary rulings do not raise a substantial issue of fact or law that would support Defendant's release pending appeal.

### C.    Prosecutorial Misconduct

Defendant argues statements made by the government during its closing argument improperly shifted the burden of proof to the defendants to prove their innocence. Defendant is appealing the Court's denial of a mistrial based on these improper statements. Should this ruling be reversed, this would result in a reversal of the conviction and necessitate a new trial.

8

The Sixth Circuit reviews this Court's decisions regarding prosecutorial misconduct de novo. *United States v. Tarwater*, 308 F.3d 494, 510-11 (6th Cir.2002). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a violation of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(internal citations omitted). Claims of prosecutorial misconduct are reviewed under a two-step process. *United States v. Carroll*, 26 F.3d 1380, 1383-87 (6th Cir.1994). The first issue is whether the remarks or conduct were improper; the second is whether the remarks or conduct were flagrant. *Id.* at 1387. "The remarks or comments of the prosecutor must be placed within the context of the trial to determine whether such comments amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 11-12 (1985).

To determine if a statement is sufficiently flagrant, effectively rendering the trial unfair, the Court considers the following factors: 1) whether the remarks tended to mislead the jury or to prejudice the accused; 2) whether the remarks were isolated or extensive; 3) whether the remarks were deliberately or accidentally placed before the jury; and 4) the overall strength of the evidence against the accused. *United States v. Green*, 305 F.3d 422, 429 (6th Cir.2002); *Broom v. Mitchell*, 441 F.3d 392, 412-13 (6th Cir. 2006). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial, or so gross as probably to prejudice the defendant." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.1997) (internal citations omitted).

The Court acknowledges the government's statement Defendant would be able to keep the $ 4,000,000 if he was acquitted was inappropriate and prejudicial. However, in light of the context of the trial as a whole, would not justify reversal. *See United States v. Hitow*, 889 F.2d 1573, 1579

(6th Cir. 1989) ("Even if certain comments are found to be inappropriate, they . . . must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error").  The government's remark would tend to prejudice the accused, however, it was an isolated remark  and the overall strength of the evidence against the accused would have supported the verdict regardless of the inappropriate comment. The jury was instructed to disregard as evidence statements made by attorneys in their opening and closing statements. We must assume the jury complied with the Court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *Francis v. Franklin*, 471 U.S. 307, 325, n.9 (1985); *see also Hutchison v. Bell*, 303 F.3d 720, 751 (6th Cir. 2002) (recognizing "the effectiveness of curative instructions in mitigating prejudice."). The Court finds this isolated remark is  insufficient to warrant a new trial or reversal on appeal.

The statement by the government referring to defense's failure to call Goddard as a defense witness during closing arguments does not suffice to improperly shift the burden of proof to Defendant.  The Sixth Circuit affords "wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were otherwise fair."*Young*, 470 U.S. at 11; *Hitow*, 889 F.2d at 1579.  The Court examines "defense counsel's conduct, as well as the nature of the prosecutor's response."  *Young*, 470 U.S. at 12.  Here, defense counsel raised the government's failure to call Goddard as a witness and the government responded to this allegation. Furthermore, the Court gave clear instructions as to the burden of proof as well as the fact closing arguments are not to be considered evidence.  The Court finds this statement does not present a substantial issue which would lead to a reversal or new trial on appeal.

### D.  Calculation of Loss for Sentencing Purposes

10

Defendant contends the eighteen-level upward adjustment for the amount of loss under USSG § 2B1.1(b)(1)(J) was in error and the appropriate base offense level should be 7. Even assuming Defendant's argument is successful on appeal and the eighteen-level adjustment is reversed, this Court is not bound to impose a sentence within the new guidelines.

After the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), making the Guidelines advisory, the Court announced the methodology it will typically follow in arriving at a sentencing decision. *United States v. Phelps*, 366 F. Supp. 2d 580 (E.D. Tenn. 2005). That methodology involves a three-step sentencing process. As a first step, the Court determines the proper advisory Guidelines range. *Gall*, 128 S. Ct. at 596 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"). The second step requires the Court to determine whether, pursuant to the United States Sentencing Guidelines Manual, any departures from the advisory Guidelines range apply. USSG ch. 5, pt. K; *Phelps*, 366 F. Supp. at 586. The Court considers arguments and motions filed by the parties for upward or downward departures under the Guidelines or the Sentencing Commission's policy statements. 18 U.S.C. § 3553(a)(4), (5).

After the Court has determined the proper Guidelines range and decided the appropriateness of any departures, the Court must identify the appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). *Phelps*, 366 F. Supp. at 586. This is based on an "individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. The court may impose a sentence within the applicable Guidelines range (after any clearly applicable departures) if such is consistent with the court's consideration of the § 3553(a) factors, or impose a non-Guidelines sentence if such is justified by the § 3553(a) factors. *See United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008)

(en banc).  A non-Guidelines sentence need not be supported by factors that would have justified a departure under the old, mandatory regime.

The Court, having completed the three-step inquiry at Defendant's sentencing, imposed a non-Guidelines sentence of 78 months based on the § 3553(a) factors. Thus, this sentence was not based upon the loss amount in isolation.  The Court was especially concerned with adequate retribution and deterrence of others from committing similar forms of bank fraud. This concern about retribution and deterrence would continue to be a driving force in this Court's sentence regardless of the amount of loss attributed to Defendant.  The Court finds a reversal on the amount of loss calculated  would not result in a sentence that did not include imprisonment, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus expected duration of the appeal process."  18 U.S.C. § 3143 (b).  In all likelihood, under § 3553(a), even if the Court had  determined a lesser loss amount, the sentence would have been substantially the same.


## II.      **VOLUNTARY SURRENDER**

Should the Court deny Defendant's motion for release pending appeal, Defendant moves for release pending a facility designation by the Bureau of Prisons. For the reasons stated above, the Court finds Defendant has not presented a compelling case for self-reporting and the Court will not order Defendant released on bond until a facility has been assigned.


## III.      **RECOMMENDATION DEFENDANT SERVE IN ESTILL, SOUTH CAROLINA**

The Court, having considered Defendant's family circumstances, will make a

recommendation Defendant complete his sentence at the facility in Estill, South Carolina. This recommendation has been communicated to the Bureau of Prisons through the Probation Office. However, the Court has limited authority to control where Defendant will be assigned as the Bureau of Prisons is ultimately the entity responsible for designation.

III.    **CONCLUSION**

Based on the foregoing analysis of the § 3143 factors, the Court will **DENY** Defendant's motion for release pending appeal, will **DENY** Defendant's motion for release on bond pending designation, and will **GRANT** Defendant's request for a recommendation he be assigned to the federal prison in Estill, South Carolina to serve his sentence.

An Order shall enter.

/s/_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**